IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL GRAY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH D. KYLER | : | 03-5030 |

REPORT AND RECOMMENDATION

JACOB P.  HART                                        DATE:   May 14, 2008
UNITED STATES MAGISTRATE JUDGE

This is a counseled petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254

by an individual currently incarcerated at the State Correctional Institute at Fayette,

Pennsylvania.  For the reasons that follow, I recommend that the petition be denied.

I.       Factual and Procedural Background

On June 10, 1996, following a jury trial in the Court of Common Pleas for Philadelphia

County, Darryl Gray was convicted of first-degree murder, possession of an instrument of crime,

and violations of the Uniform Firearms Act, in connection with the shooting of a man named

Thomas Horn, known as T.J.

As summarized by the trial court:

A friend of the victim, David Lyons, witnessed the shooting and described efforts
by the defendant to first strike and then shoot the victim with an automatic
weapon.  Lyons also testified that the shooting stemmed from an altercation the
night before between the defendant and the decedent's brother, Reggie.  Larry
Corbett, a/k/a "Banker" also witnessed the shooting and similarly described
efforts by the defendant to first smack and then shoot the decedent with the gun.
The medical examiner concluded that the victim died of a single gunshot wound
to the chest which penetrated the liver, lung and heart.  Following the killing, the
defendant fled the area and remained a fugitive until January 16, 1996.  The
defendant called witnesses and presented evidence that he was intoxicated at the
time of the killing and that he fired at the decedent out of fear for his life.

Commonwealth v. Gray, Jan. 1996 No. 0841 (C.C.P. Phila. Jun. 26, 1997) at 2.

Gray was sentenced to life imprisonment for the murder charge and concurrent terms of imprisonment for the other offenses.  He filed a timely appeal in the Superior Court, arguing that (1) the evidence was insufficient to sustain his conviction for first degree murder; (2) the verdict was against the weight of the evidence; (3) the trial court erred in refusing to admit the hearsay evidence of Officer Geiger, who was at the scene of the homicide, and stated that bystanders told him that another man was the shooter.  Brief, attached to Defendant's response as Exhibit C.

On March 3, 1998, the Superior Court affirmed the judgment of sentence. Commonwealth v. Gray, No. 353 Phila. 1997 (Pa. Super., March 3, 1998), attached to Defendant's response as Exhibit D.  The Pennsylvania Supreme Court denied allocatur on July 28, 1998.  Commonwealth v. Gray, 555 Pa. 740 (Jul. 28, 1998) (Table).

On April 22, 1999, Gray filed a petition pursuant to Pennsylvania's Post-Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. § 9541-9551.  He argued that trial counsel was ineffective for, among other things, failing to conduct an adequate colloquy on the record regarding the waiver of his right to an adverse inference jury instruction "as required by Commonwealth v. Thompson, 674 A.2d 217 (Pa. 1996)."  Motion for Post-Conviction Collateral Relief, attached to Defendant's response as Exhibit F.

The PCRA court denied the petition on October 3, 2001.  Commonwealth v. Gray, Jan. 2001, 9601-0841, attached to Defendant's Response as Exhibit G.  Gray appealed to the Pennsylvania Superior Court.  Commonwealth v. Gray, No. 811, EDA 2002, Brief, attached to Defendant's Response as Exhibit H.  The issues in his appeal brief do not, however, entirely match the issues he raised in his original PCRA petition.

In the "Statement of Questions Presented" section, Gray raised two issues:  "Whether Defendant is entitled to a new trial where the court gave no adverse inference jury instruction cautioning the jury that they could not hold Defendant's silence at trial against him" and "Whether the trial counsel was ineffective for failing to present an eyewitness whose affidavit states that he saw the shooting and that Defendant was not the shooter."  Id. at 6.  In his "Summary of Argument" section he argued that "the failure of trial counsel [and not the court, as in his "Statement of Questions Presented"] to conduct an adequate colloquy of Defendant on the Record regarding waiver of his right to an adverse inference jury instruction is a direct and clear violation of the Supreme Court's mandate in Commonwealth v. Thompson, 674 A.2d 217 (Pa. 1996)."  Id. at 8.

Gray's actual argument section, however, matched neither the "Statement of Questions Presented" nor the "Summary of Argument."  He did not mention counsel at all.  He cited only Commonwealth v. Thompson, supra, in arguing that:  "Defendant was denied a fair trial where the court failed to colloquy him on the record regarding his waiver of his right to an 'adverse inference' jury instruction."  Id. at 10.

The Superior Court affirmed the denial of collateral relief on November 21, 2002. Commonwealth v. Gray, No. 811 EDA 2002 (Pa. Super. Nov. 21, 2002), attached to Defendant's Response as Exhibit I.  It stated that Gray had argued "that the trial court erred in failing to instruct the jury that his silence at trial cannot be held against him."  It refused to address the issue on its merits, because it was not one properly raised under the PCRA statute, 42 Pa. C.S. § 9543(a)(2).

The Pennsylvania Supreme Court denied allocatur on May 15, 2003.  Commonwealth v. Gray, 573 Pa. 689 (May 15, 203) (Table), attached to Defendant's Response as Exhibit J. Thereafter, on or before January 30, 2004, Gray filed a second petition for collateral relief which, although it was not so labeled, was construed as a second PCRA petition.  "Petition for Issuance of Writ of Habeas Corpus", attached to Defendant's Response as Exhibit L.  In it, Gray raised five claims which are not at issue here.

On September 8, 2003, while the second PCRA petition was still pending, Gray filed a petition in this Court for habeas corpus relief.  Then, on January 30, 2004, before the District Attorney filed a reply, Gray sought leave to amend his habeas petition to add an additional six claims.

In a Report and Recommendation dated March 12, 2004, I recommended that Gray's habeas petition be stayed until the resolution of the PCRA petition.  The Honorable Beryl M. Schiller adopted this Report and Recommendation, and placed the case in suspense on April 8, 2004.

The Pennsylvania Court of Common Pleas dismissed Gray's second PCRA petition as untimely on June 19, 2006.  Gray did not appeal.  On June 8, 2007, Gray filed a *pro se* motion to re-open this case.  The matter was removed from civil suspense on June 20, 2007.

On December 18, 2007, Norris E. Gelman, Esq.  entered his appearance on behalf of Gray.  On February 21, 2008, he filed a motion to amend the federal habeas petition, (as will be discussed further below), and a supporting memorandum of law.  He also specifically withdrew certain claims.  As it now stands, and including the claim for which amendment is sought, Gray's habeas corpus petition asserts the following:

(1) Gray's due process rights were violated when the trial court judge failed to give a "no adverse inference" instruction (warning the jury not to make an adverse inference from Gray's failure to testify), but failed to colloquy Gray on the record about his decision not to request such an instruction;

(2) Gray's due process rights and Sixth Amendment right to compulsory process were violated by the trial court, when it excluded as hearsay the statements of Captain Geiger, a police officer at the scene of the homicide, describing comments made by bystanders suggesting that a man other than Gray had been the shooter; and

(3) Trial counsel was ineffective for failing to interview Rasheia Weedon "and decid[ing] after such interview what defense to present."

II.   Discussion

A.   The "No Adverse Inference" Instruction

In Carter v. Kentucky, 450 U.S. 288 (1980), the United States Supreme Court held that a trial court must, at the request of the defendant, instruct the jury that a defendant is not compelled to testify, and that the fact that he chose not to testify cannot be used to infer guilt.  The Commonwealth of Pennsylvania has added a requirement that a defendant be colloquied on the record as to whether he wants, or does not want, the jury to hear a "no adverse inference" instruction.  Commonwealth v. Thompson, 674 A.2d 217, 222 (Pa. 1996).

At trial, the judge conducted a colloquy on the record with Gray about his decision not to testify.  After that, the following exchange took place regarding "no adverse inference" instructions:

THE COURT:  My charge says "The defendant has not testified in this case.  That is his Constitutional right.  And as I told you before, you may not hold that against him.  You may not have an adverse feeling against him because he exercises his Constitutional right."  Recent cases have said that some lawyers do not want that said because it would highlight, in their opinion, his not testifying.  I'm now asking you do you want me to give that charge or not?

MR. SERVER (trial counsel):  May I have a moment with Mr. Gray?

THE COURT:  Surely.

(Whereupon counsel confers with defendant).

MR. SERVER:  The defendant indicates that he would prefer that nothing be said about that.

THE COURT:  All right.

Trial Transcript of June 7, 1996, at 35-36.

As discussed above, Gray argued in his first PCRA petition that trial counsel was ineffective for failing to ensure that he was adequately informed on the record of his right to a "no adverse inference" instruction, as required by Commonwealth v. Thompson, supra.  After this petition was dismissed, however, and Gray filed an appeal brief with the Superior Court, the claim had changed; it was no longer one of ineffective assistance of counsel.  Rather, despite a reference to counsel on page 8 of his brief, his actual argument was that the court wrongfully failed to colloquy him on the record.

In his original habeas corpus petition, the "no adverse inference" claim was once again phrased as one of ineffectiveness of counsel.  Gray has now moved to replace that claim with one stating that his due process rights were violated by the trial court's failure to conduct an adequate colloquy on the record.

I need not decide whether Gray has the right to amend his petition at this stage.  In none of its variously asserted forms does the claim entitle Gray to habeas corpus relief.

1.      The "Ineffective Assistance" Claim is Unexhausted and Procedurally Defaulted

Before a petitioner may be granted habeas corpus relief on a particular claim, he must exhaust that claim by presenting it to the highest state court.  Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995).  Gray did not raise this claim at all on direct appeal.  In his PCRA petition, he raised it only at the trial court level.  When he reached the Superior Court, the argument regarding the "no adverse inference" rule was in a different form, implicating a different body of law.  Thus, Gray's claim that counsel was ineffective with regard to the trial court's failure to colloquy him on the record is an unexhausted claim.

Moreover, the claim cannot now be exhausted, because it is procedurally defaulted.  The procedural default barrier, in the context of habeas corpus law, precludes a federal court from reviewing a state petitioner's claim if the state court would deem that claim defaulted under an independent and adequate state rule.  Coleman v. Thompson, 501 U.S. 722, 729 (1991); Carter v. Vaughn, supra, at 595.

There is no question that the Pennsylvania courts would deem this claim defaulted.  Gray's second petition for collateral relief was dismissed as untimely.  There is no possibility that a third would be permitted.

To survive procedural default in the federal courts, a petitioner must demonstrate either (a) cause for the default and actual prejudice arising from the violation of federal law; or (b) that failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, supra, at 750.  To establish a fundamental miscarriage of justice, the petitioner must demonstrate actual innocence.  Schlup v. Delo, 513 U.S. 298 (1995).  Gray has not even attempted to show these things.  As originally set forth in his habeas corpus petition, therefore, this claim cannot be considered by a habeas court.

2.      The Proposed Amended Claim is Also Procedurally Defaulted

Gray's direct claim that his rights were violated by the trial court's failure to conduct a colloquy on the record regarding the "no adverse inference" instruction is also procedurally defaulted.  The Pennsylvania Superior Court refused to consider it on the merits, on the basis that it was not a claim properly raised in a PCRA petition.  Thus, the claim was defaulted under an independent and adequate state rule.  As such, it is procedurally defaulted and can not be considered here.

3.      The Direct Claim, As Raised in State Court, is Non-Cognizable

The claim as raised before the Pennsylvania Superior Court is not cognizable here, because it alleged only a violation of state law, and not a violation of rights granted by the United States Constitution.   Federal habeas corpus relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62 (1991).

Although federal law, as set forth in Carter v. Kentucky, grants a defendant the right to a "no adverse inference" instruction,  it does not require an on-the-record colloquy before that right is waived.  This is a requirement created by the Pennsylvania Supreme Court in Commonwealth v. Thompson.  The Thompson court did not cite Carter, or any other federal law, in writing:

> [I]t is apparent to this Court that further elucidation for the trial bench and bar is required on the question of when a no adverse inference instruction is warranted. In order to finalize the endless argument as to when and how the subject instruction is to be given and if waived, how it is to be waived and, in light of the rule already established by this Court in [Commonwealth v. Edwards, 535 Pa. 575 (1993)], we find it necessary and prudent to take additional steps to insure proper consideration of the ramifications of this particular instruction.  Accordingly, we hold that from this day forward the no adverse inference instruction shall be given absent an *express* on the record colloquy by the defendant waiving the charge.

674 A.2d at 222.

8

Finally, to the extent that Gray intends to raise an entirely new claim, based on his federal Constitutional rights, in his amended claim, it is quite obvious that such a claim is unexhausted and procedurally defaulted, since all of Gray's state deadlines are behind him.

In conclusion, then, Gray is not entitled to habeas corpus relief because of the trial court's failure to conduct a colloquy on the record as to whether he waived his right to a "no adverse inference" instruction.  This is true whether or not his motion to amend is granted.

B.      Captain Geiger's Statement

On June 5, 1996, immediately before Gray's trial, the judge took testimony on the Commonwealth's motion to suppress the evidence of Housing Authority Police Captain Edward Geiger.  Commonwealth v. Gray, January Term, 1996, Trial Transcript of June 5, 1996 at 44.

Captain Geiger testified that he was near the site of Thomas Horn's shooting, and ran over when he heard shots.  Id. at 44-45.  He ran to Horn, who had run a short distance and then collapsed.  Id. at 45.  Between three to five minutes after he heard the shot, and while he was next to Horn, Captain Geiger called out to the "number of people" at the scene, asking whether anybody saw anything "or if they knew who in fact had shot the decedent."  Id. at 46.  Certain people "blurted out Reds and/or Reggie."  Id.

The Commonwealth sought to suppress this testimony as hearsay.  Id. at 51-53.  Gray's attorney argued that it fell into the excited utterance exception to the hearsay rule.  Id. at 50.  The judge decided to exclude the evidence, stating:

> All right, based on the testimony that I've just heard from Captain Geiger, I cannot find that this was excited utterance.  There is no evidence that these witnesses were on the scene.  There is no evidence that they saw the shooting. There is no evidence that they were disturbed or upset in any way.  There is no evidence that they were not just speaking something that they thought.  I don't see

9

the reliability of this under the basis of excited utterance.

Id. at 53.

In his direct appeal, Gray argued that the trial court had "abused its discretion in barring the defense from introducing the testimony of Captain Edward Geiger of the Housing Authority Police that he heard people at the crime scene immediately after the shooting yelling that Reds or Reggie was the shooter."  Appellate Brief, attached to Defendant's Response as Exhibit C, at 13. In the body of his argument, Gray explained the *res gestae* exception to the hearsay rule under Commonwealth law, and relied upon Pennsylvania cases interpreting it.  Id. at 21-23.  He did not even claim that a constitutional right had been violated.

Similarly, the Superior Court, which affirmed the trial court's exclusion of the evidence, did not construe the claim as raising a constitutional issue.  Commonwealth v. Gray, No. 353, Phila. 1997 (Mar. 3, 1998), attached to Defendant's Response as Exhibit D at 7.  It relied only upon state law.

In accordance with the law discussed above in connection with Gray's first claim, his present claim that the trial court's exclusion of this evidence violated his rights under the Fifth and Sixth Amendments to the United States Constitution is unexhausted, since it was never presented to the state courts.  Carter v. Vaughn.  The principle of exhaustion is not a mere formal requirement, but is based on rules of comity between state and federal courts.  The United States Supreme Court has said:

> State courts, like federal courts, are obliged to enforce federal law.  Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.  This rule of comity reduces friction between the state and federal court systems by avoiding

10

the "unseem[liness] of a federal court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), citing Rose v. Lundy, 455 U.S. 509, 515-516 (1982) and Darr v. Burford, 339 U.S. 200, 204 (1950).

For this reason, Gray's constitutional claims regarding Captain Geiger's testimony cannot be addressed here.  Moreover, the claims are procedurally exhausted.  If Gray were to attempt to raise them in a third PCRA petition, the state courts would dismiss the petition as untimely, as they did with his second PCRA petition.

In any event, a state court evidentiary decision is not cognizable in federal habeas corpus unless it results in an error which deprives a defendant of fundamental fairness in his criminal trial.  Reynolds v. Ellingsworth, 843 F.2d 712, 717 at ftn. 10 (3d Cir. 1988);  Bisaccia v. Attorney General of New Jersey, 623 F.2d 307, 312 (3d Cir. 1980), cert. denied 449 U.S. 1042 (1980).  The relevant federal standard therefore requires Gray to show that the trial court's decision was contrary to federal law because they deprived him of a fundamentally fair trial.

Gray cannot show this.  No witness at the trial testified that Gray was not the shooter, or that a man named "Reds" or "Reggie" shot Horn.  In fact, David Lyons testified that "Reg" was Horn's brother, and that a fight the night before between Reg and Gray had caused Gray to shoot Horn.  Trial Transcript of June 6, 1996 at 20.  This might have explained the crowd mentioning Reggie's name.  A single defense witness, Anthony Sharpe, testified Gray was intoxicated at the time of the shooting, but did not claim to have seen the shooting.  Trial Transcript of June 7, 1996 at 22-23, 26.

11

On the contrary, both David Lyons and Larry Girard Banker Corbitt testified in some detail that they saw Gray, whom they knew as "Bub", first try to smack Horn with a handgun, and then shoot him.  Trial Transcript of June 6, 1996, at 11-16 (Testimony of David Lyons), and at 52-60 (Testimony of Larry Girard Banker Corbitt).

Further, the jury heard read into the record the statement of James D. Pettit, a security guard at a casino in Las Vegas, Nevada, to whom Gray turned himself in.  Id. at 145-150.  Pettit stated that Gray approached him early one morning in January, 1996, and asked him to call the police, saying:  "I'm wanted for murder in Philadelphia, and I want to turn myself in."  Id. a 147.  The man, who identified himself as Darryl William Brown, also said:  "I called my family and they told me they have an attorney, and I'm tired of running."  Id. at 148.

Pettit continued:  "He said his conscience was bothering him and the murder was an accident.  He was asked who he killed and he said some guy, back in June.  He didn't say his name."  Id. at 149.  Detective John Haugh, who read Pettit's statement to the jury, testified that two homicide detectives from Philadelphia traveled to Las Vegas, and returned the next day with Darryl Gray, who had a tattoo on his right arm of the word "Bub."  Record at 145 and 150.

Given the strength of the evidence against Gray, combined with an alternative reason why people in the crowd might have mentioned "Reg", it cannot be said that the trial court's failure to admit Captain Geiger's hearsay statement deprived Gray of a fundamentally fair trial.

C.     Trial Counsel's Failure to Interview Rasheia Weedon

As part of the police investigation of Horn's shooting, an officer interviewed a woman named Rasheia Rita Weedon.  Investigation Interview Record, attached to Defendant's Response as Exhibit C to Exhibit F.  Weedon was a bystander who saw the shooting take place, but could

not identify the shooter.  Weedon testified that the victim's brother, Reg, ran over to the scene with their mother after the shooting took place, and was not there when the shooting happened. Significantly, she told the police that men nicknamed Boo, Whitey and Plummer were present at the scene.

Gray attached to his PCRA petition a sworn interview taken from a Rasheen Wright, who identified himself as "Whitey."  Affidavit attached to Defendant's Response as part of Exhibit C to Exhibit F.  Wright stated that Gray was not Horn's shooter, and that, if he had been called at trial, he would have testified to that effect.  Gray argued that his trial counsel had been ineffective in failing to find and talk to "Whitey", as well as "Boo" and "Plummer."  He did not mention Weedon specifically, but attached her statement, and alluded in his Memorandum of Law to "pages from the discovery and the transcript containing the names of these witnesses." Thus, the argument apparently was that interviewing Weedon would have led counsel to Wright.

The PCRA trial court wrote that Gray had not proved that the absence of Wright's testimony denied him a fair trial, since it was not shown that counsel knew of Wright's existence, or why Wright did not come forward until five years after the event.  Commonwealth v. Gray, Jan. 2001, No. 9601-0841 (Oct. 29, 2001), attached to Defendant's Response as Exhibit G.

The Superior Court affirmed the trial court, commenting rather obscurely that "Rasheia Weedon's statement was not sworn."  Opinion, supra, attached to Defendant's Response as Exhibit I at 5-6.  Principally, however, it decided that Gray could not show that any ineffectiveness by counsel prejudiced him, since there was sufficient other evidence presented at trial to show that Gray was the shooter.

Here, Gray argues once again that trial counsel was ineffective for failing to interview Weedon, "who told police about other witnesses."  Petitioner's Memorandum In Support Of His Habeas Claims, at 26.  He suggests that, if counsel had "properly investigated the case", he might have pursued a defense of actual innocence, rather than arguing self-defense and intoxication, as he did at trial.  Id.  He writes that Wright's testimony, "coupled with the Geiger testimony" might have formed a convincing innocence defense "if this could be done without doing violence to the truth." Id.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set out the Constitutional standard for ineffective assistance of counsel:

> First the defendant must show that the counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

As discussed above, this claim was specifically addressed, and rejected, by the Superior Court.  A habeas court cannot overturn the state court's decision on the merits of this issue unless the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court – Strickland, in this case – or was based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) and (2).

Gray argues that the Superior Court erred in that it refused to consider the claim because Weedon's statement was not sworn.  If this had been the sole basis for the Superior Court's

14

decision, it might, indeed, have been problematic.  However, the Superior Court actually discussed the merits of the claim, concluding that Gray had not shown that he was prejudiced. This was not contrary to, or an unreasonable application of the requirements set forth in Strickland.

In light of the testimony of Lyons and Corbitt, as well as James Pettit's statement, the Superior Court's decision that Gray was not prejudiced by trial counsel's failure to interview Weedon is well-justified.  Given that Gray confessed to a Las Vegas security guard, it is hard to see how an actual innocence defense, cobbled together from Wright's statement and Captain Geiger's hearsay testimony (even assuming the trial court judge could have been convinced to admit it), could have been made "without doing violence to the truth."  Therefore, there is no basis upon which to overturn the state court's decision on the merits of this claim.

**The petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.**

IV.    <u>Conclusion</u>

Based on the foregoing, I make the following:


# **R E C O M M E N D A T I O N**

AND NOW, this 14th day of May, 2008, IT IS RESPECTFULLY RECOMMENDED

that the petition for writ of habeas corpus be DENIED.  There is <u>no</u> basis for the issuance of a

certificate of appealabilty.



BY THE COURT:


/s/Jacob P. Hart

_____

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL GRAY                         :        CIVIL ACTION
                                    :
        v.                          :
                                    :
KENNETH D. KYLER                    :        03-5030


O R D E R

BERYL M. SCHILLER, J.

        AND NOW, this            day of                , 2008, upon careful and

independent consideration of the petition for writ of habeas corpus, and after review of the

Report and Recommendation of the United States Magistrate Judge Jacob P. Hart, it is

        ORDERED that:

        1.      The Report and Recommendation is APPROVED and ADOPTED;

        2.      The petition for writ of habeas corpus is DENIED.

        3.      There is no basis for the issuance of a certificate of appealability.




                                    BY THE COURT:



                                    _____
                                    BERYL M. SCHILLER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL GRAY                    :        CIVIL ACTION
                               :
        v.                     :
                               :
KENNETH D. KYLER               :        03-5030

O R D E R

AND NOW, this   14th   day of May, 2008, upon consideration of petitioner Darryl

Gray's Motion to Amend Habeas Claim, filed in this action as Document No. 23, it is hereby

ORDERED that the Motion is DENIED AS MOOT in the light of my Report and

Recommendation in this case, also filed this day.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE